Filed 6/10/15  P. v. Velasco CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066582 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. MH110465, SCD253731, SCS272961) |
| GEORGE VELASCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joseph P. Brannigan, Judge.  Affirmed in part, reversed in part, and remanded.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Anthony DaSilva and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

George Velasco appeals from a judgment finding him mentally incompetent, ordering him committed to Patton State Hospital, and authorizing the involuntary administration of medication. He contends there is insufficient evidence to support the involuntary medication authorization. We agree and reverse the judgment as to the authorization.

## BACKGROUND

The San Diego County District Attorney charged Velasco with vandalism over $400 (Pen. Code, § 594, subds. (a), (b)(1)),[1] receiving stolen property (§ 496, subd. (a)), and petty theft (§ 484). The following week, the trial court suspended criminal proceedings pending a determination of Velasco's mental competency.

A court-appointed forensic psychologist evaluated Velasco and submitted two reports: the first opined Velasco was incompetent to stand trial, and the second opined the most appropriate, least restrictive placement for him was a state hospital commitment. In the first, more comprehensive report, the psychologist found Velasco's mental status examination "notable for abstract thought process and paranoid and delusional thought content" and she provided several supporting examples. The psychologist believed Velasco suffered from an unspecified schizophrenia spectrum or other psychotic disorder. He had prior similar diagnoses and had recently been prescribed an antipsychotic medication, which he stated he had been refusing to take. Although he had a history of

---

[1]    Further statutory references are also to the Penal Code unless otherwise stated.

six prior psychiatric hospitalizations, he denied them. He also denied having any psychological problems. The psychologist described Velasco's insight and judgment as poor.

At a hearing to determine Velasco's mental competency, Velasco stipulated to admission of the psychologist's reports into evidence. After receiving the reports into evidence, the trial court stated, "Based upon the input from the doctor, I'll make a finding that [Velasco] is not currently mentally competent to stand trial and assist his attorney. [¶] Therefore, he'll be committed to Patton State Hospital for the term of three years or until restored to competency. He'll get credit for 53 days, and we'll order that he take his medication, voluntary or involuntary, if necessary."

In the judgment of mental incompetency, the court more specifically found as the basis for authorizing the involuntary administration of medication that "[Velasco] lacks capacity to make a decision regarding antipsychotic medication. [Velasco's] mental disorder requires medical treatment with antipsychotic medication, and if [Velasco's] mental disorder is not treated with antipsychotic medication, it is possible that serious harm to the physical or mental health of [Velasco] will result."

## DISCUSSION

"An individual has a constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic medication under the due process clause of the Fourteenth Amendment. [Citations.] [¶] 'The significant due process liberty interest in avoiding mandatory administration of antipsychotic medication is grounded in two considerations.' [Citation.] 'First, the drugs "tinker[] with the mental processes,"

3

[citation]' and while they can eliminate undesirable behaviors, they also interfere with a person's autonomy and can impair his ability to function in certain contexts. [Citation.] Second, while antipsychotic medication has well-documented therapeutic benefits, the medication has serious, even fatal, side effects." (*People v. O'Dell* (2005) 126 Cal.App.4th 562, 568-569.)

Nonetheless, a court may authorize the involuntary administration of antipsychotic medication to restore a defendant's trial competence if "the Government, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment, [has] shown a need for that treatment sufficiently important to overcome the individual's protected interest in refusing it." (*Sell v. United States* (2003) 539 U.S. 166, 183.)

In California, section 1370 governs the involuntary administration of antipsychotic medication to criminal defendants found mentally incompetent.[2] Section 1370 authorizes the involuntary administration of antipsychotic medication in three circumstances. (§ 1370, subd. (a)(2)(B)(ii).) The first circumstance is when "[t]he defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result."

---

[2] Section 1370 was amended effective January 1, 2015. (Stats. 2014, ch. 733, § 1; Stats. 2014, ch. 742, § 1; Stats. 2014, ch. 759, § 7.3.) We refer to the current version of the statute as the amendments did not affect the provisions at issue in this appeal.

4

(§ 1370, subd. (a)(2)(B)(i)(I).) The second circumstance is when "[t]he defendant is a danger to others, in that the defendant has inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another while in custody, or the defendant had inflicted, attempted to inflict, or made a serious threat of inflicting substantial physical harm on another that resulted in his or her being taken into custody, and the defendant presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm on others." (§ 1370, subd. (a)(2)(B)(i)(II).) The third circumstance is when "[t]he people have charged the defendant with a serious crime against the person or property, involuntary administration of antipsychotic medication is substantially likely to render the defendant competent to stand trial, the medication is unlikely to have side effects that interfere with the defendant's ability to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a reasonable manner, less intrusive treatments are unlikely to have substantially the same results, and antipsychotic medication is in the patient's best medical interest in light of his or her medical condition." (§ 1370, subd. (a)(2)(B)(i)(III).) A court many not order the involuntary administration of antipsychotic medication in the third circumstance, unless it has found neither the first nor the second circumstance apply. (§ 1370, subd. (a)(2)(B)(ii).)

In this case, the trial court's involuntary medication authorization reflects an implicit finding the first circumstance applied. We review the authorization for substantial evidence. (*People v. McDuffie* (2006) 144 Cal.App.4th 880, 887.) Thus, for the authorization to be valid there must be substantial evidence: (1) Velasco lacked

5

capacity to make decisions regarding antipsychotic medication, (2) his mental disorder required treatment with antipsychotic medication, and (3) without such treatment, Velasco's mental or physical health probably would be seriously harmed. (§ 1370, subd. (a)(2)(B)(i)(I).)

As Velasco points out, however, the psychologist who evaluated him did not offer an opinion on any of these points. Although the psychologist's report states Velasco had symptoms of a severe mental disorder, had recently been prescribed medication, was refusing to take the medication, and had poor insight and judgment, the report did not state he lacked the capacity to make medication decisions, he required medication to treat his mental disorder or that his mental or physical health would be harmed without medication.

Indeed, as to the appropriateness of treatment with antipsychotic medication, the court could not have accepted an opinion from the psychologist even if the psychologist had offered it. A psychologist is prohibited from prescribing medication. (Bus. & Prof. Code, § 2904.) Consistent with this prohibition, section 1369, subdivision (a), governing reports prepared for a criminal defendant's competency hearing, provides: "If an examining psychologist is of the opinion that antipsychotic medication may be medically appropriate for the defendant and that the defendant should be evaluated by a psychiatrist to determine if antipsychotic medication is medically appropriate, the psychologist shall inform the court of this opinion and his or her recommendation as to whether a psychiatrist should examine the defendant. . . . If the defendant is examined by a psychiatrist and the psychiatrist forms an opinion as to whether or not treatment with

6

antipsychotic medication is medically appropriate, the psychiatrist shall inform the court of his or her opinions as to the likely or potential side effects of the medication, the expected efficacy of the medication, possible alternative treatments, and whether it is medically appropriate to administer antipsychotic medication in the county jail."[3]  As no such evidence was sought by or provided to the trial court in this case, the record necessarily lacks sufficient evidence to support the trial court's involuntary medication authorization.

DISPOSITION

The judgment is reversed as to the involuntary medication authorization and the matter is remanded for further proceedings consistent with this opinion.  The judgment is affirmed in all other respects.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

---

[3]    Section 1369 was also amended effective January 1, 2015.  (Stats. 2014, ch. 759, § 5.)  We also refer to the current version of this statute, as the amendments did not affect the provisions at issue in this appeal.